UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

IVORY RICHARD ADAMS, III,

                         Plaintiff,

      -v-                                         6:14-CV-1540

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                 OF COUNSEL:

OLINSKY LAW GROUP                  HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL      DAVID L. BROWN, ESQ.
     SOCIAL SECURITY ADMINISTRATION        Special Ass't United States Attorney
     REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

      Plaintiff Ivory Richard Adams III ("Adams" or "plaintiff") brings this action, pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social

Security's ("Commissioner" or "defendant") final decision denying his application for

Supplemental Security Income ("SSI").  The parties have filed their briefs as well as the

Administrative Record on Appeal and the motions will be considered on the basis of these submissions without oral argument.[1]

## II. **BACKGROUND**

In February 2012, Adams filed applications for SSI and Disability Insurance Benefits ("DIB") alleging that his mood disorders had rendered him disabled since June 30, 2004. R. at 118-130, 162.[2]

The Commissioner initially denied Adams's claims on May 7, 2012. R. at 61-68. At plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Gregory Hamel on April 17, 2013. Id. at 32-58. Plaintiff, represented by an attorney, appeared and testified. See id. The ALJ also heard testimony from Vocational Expert ("VE") Cyndee Burnett. Id. at 51-57; see also id. at 107-09. The record was held open after the hearing to permit plaintiff's attorney an opportunity to supplement the record. Id. at 57; see also id. at 117 (amending alleged onset date to February 9, 2012).

On May 17, 2013, the ALJ issued a written decision denying Adams's application for benefits, which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. R. at 1-4, 14-22.

On December 19, 2014, Adams filed this action seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] Citations to "R." refer to the Administrative Record.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986

(2d Cir. 1987)).

## B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical

- 4 -

evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. ALJ's Decision

Initially, the ALJ determined that Adams's amended alleged onset date of February 9,

2012 resulted in the effective withdrawal of plaintiff's DIB claim, leaving only his SSI claim remaining for consideration. R. at 14. The ALJ then found that plaintiff had not engaged in substantial gainful activity since that amended alleged onset date. Id. at 16. The ALJ next determined that plaintiff's depressive disorder, anxiety disorder, post-traumatic stress disorder, and bipolar disorder were severe impairments. Id.

The ALJ then concluded that these impairments, considered individually or in combination, did not meet or equal any of the Listings, including in particular Listing 12.04 (affective disorders) and Listing 12.06 (anxiety-related disorders). R. at 17. The ALJ then determined that plaintiff retained the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot do tasks requiring more than occasional public contact or more than occasional interactions with co-workers.

R. at 18.

Based on these findings and Adams's age, education, and past relevant work experience, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 21. Accordingly, the ALJ concluded plaintiff was not disabled within the meaning of the Act. Id. at 22.

### D. **Plaintiff's Appeal**

Adams argues the ALJ: (1) reached an improper RFC determination; (2) erroneously concluded that his past relevant work had been performed at the level of substantial gainful activity; and (3) failed to support his step five finding with substantial evidence.

### 1. **RFC Determination**

Adams argues the ALJ failed to apply the proper standards for evaluating his

credibility and for weighing the medical evidence in the record and, as a result, reached an RFC determination that is unsupported by substantial evidence.

A claimant's RFC is an assessment of "what an individual can still do despite his or her limitations." Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (Mordue, C.J.) (citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545(a)). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." Casey v. Comm'r of Soc. Sec., 2015 WL 5512602, at *10 (N.D.N.Y. Sept. 15, 2015) (Suddaby, J.) (adopting Report & Recommendation of Hines, M.J.).

### a. **Assessment of Medical Opinions**

First, Adams claims the ALJ improperly rejected the medical opinion of Vidya Patil, M.D., plaintiff's treating psychiatrist, who assessed more restrictive limitations than those ultimately incorporated into the ALJ's RFC determination.

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and (3) other. The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. Martin v. Colvin, 2016 WL 1383507, at *5 (N.D.N.Y. Apr. 7, 2016) (citation omitted).

As relevant here, the opinion of a treating source regarding the nature and severity of

a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." Martin, 2016 WL 1383507, at *5 (quoting Cobbins v. Comm'r of Soc. Sec., 32 F. Supp. 3d 126, 134 (N.D.N.Y. 2012)).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Martin, 2016 WL 1383507, at *5 (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. Id. (citation omitted). In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." Id. (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Beyond this so-called "treating physician rule," the same six factors set forth above

apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations: the "acceptable" and "other" sources mentioned earlier. <u>Martin</u>, 2016 WL 1383507, at *5. The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists." <u>Id</u>. (citation omitted). The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists." <u>Id</u>.

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the *existence* of a medically determinable impairment. <u>Martin</u>, 2016 WL 1383507, at *5 (citation omitted). However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function." <u>Id</u>.

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule. <u>See, e.g.</u>, <u>Petrie v. Astrue</u>, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

Turning to the particular facts of this case, it bears noting that Adams's brief muddies the waters on this issue by making some fundamental misstatements. For instance, plaintiff repeatedly mischaracterizes the ALJ's findings with regard to Dr. Patil, erroneously asserting the ALJ gave "no weight" to, or completely "rejected," Dr. Patil's opinion. Relatedly, plaintiff mistakenly suggests at least three times—and twice emphasizing in bold lettering—that the

ALJ is *never* permitted to reject the findings of a plaintiff's treating physician.

Both of these assertions are incorrect. To be sure, an ALJ must always give good reasons to explain why the opinion of a claimant's treating physician has been discounted. See, e.g., Borgos-Hansen v. Colvin, 109 F. Supp. 3d 509, 519 (D. Conn. 2015) (tracing the development and outlining the importance of the treating physician rule). But this "good reason" requirement does not mean that a treating physician's opinion may never be discounted or, in appropriate cases, even completely rejected. See, e.g., Otero v. Colvin, 2013 WL 1148769, at *5 (E.D.N.Y. Mar. 19, 2013) ("The ALJ may discount, or even disregard entirely, the opinion of the treating physician where good cause is shown based on an assessment of the[ relevant] factors.").

More importantly, that is not what happened here. The opinions at issue are contained in an April 1, 2013 medical source statement that bears the signature of Dr. Patil, plaintiff's treating psychiatrist.[3] R. at 329. According to this medical source statement, plaintiff retains "no useful ability to function" in terms of his ability to accept instructions, respond appropriately to criticism from supervisors, get along with co-workers, travel to unfamiliar places, and use public transportation. Id. at 328.

This medical source statement further indicates Adams is "unable to meet competitive standards" for maintaining attention for a two-hour segment, completing a normal work week without interruption, and maintaining socially appropriate behavior. R. at 328. Finally, this document indicates plaintiff is "seriously limited, but not precluded" from remembering

---

[3] The report indicates it was actually completed by Thomas Butler, plaintiff's social worker / therapist, a provider ordinarily considered an "other" source under the Regulations. See, e.g., Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.) (noting records of social worker entitled to consideration as "other source" evidence).

work-like procedures, understanding, remembering, and carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, making simple work-related decisions, and performing at a consistent pace without an unreasonable number and length of rest periods.  Id.

In Adams's case, the ALJ chose to assign "limited weight" to this opinion.  R. at 20.  In doing so, the ALJ determined that Dr. Patil's finding that plaintiff suffered from more than "moderate" limitations was unsupported by Dr. Patil's own treatment notes, Dr. Melnick's treatment notes, Dr. Noia's treatment notes and findings, and Dr. Noia's GAF ratings.  Id. Further, the ALJ concluded that Dr. Patil's statements to the effect that plaintiff would essentially be unable to hold down any job were opinions on an issue specifically reserved to the Commissioner; that is, the ultimate question of disability within the meaning of the Act.  Id. at 20.

Adams argues it was improper for the ALJ to assign these findings anything less than "great" or "controlling" weight.  Pl.'s Mem. at 20.  In support of this argument, plaintiff first claims the ALJ failed to discuss the fact that Dr. Patil's extensive treatment relationship with plaintiff began in early 2011.  However, it is well-settled that "an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear."  Suarez v. Colvin, 102 F. Supp. 3d 552, 574 (S.D.N.Y. 2015).

A review of the ALJ's written opinion reveals that he discharged that duty here—among other things, his written decision takes note of the fact that plaintiff's mental health treatment stretched back at least through the year 2011 and that plaintiff was currently treating with Dr. Patil.  R. at 19-20.  In other words, the ALJ recognized that Dr. Patil was plaintiff's treating provider and proceeded to properly apply the substance of the treating

physician rule in evaluating Dr. Patil's opinion.

Adams next argues that the ALJ erred because Dr. Patil's opinions are in fact consistent with the rest of the medical evidence in the record. In support of this argument, plaintiff identifies a December 21, 2010 outpatient psychiatric evaluation completed by Bahram Omidian, M.D., that notes "there is question or evidence of being delusional with persecutory and paranoid features." R. at 296. Plaintiff also points to progress notes from Dr. Patil memorializing visits in January, February, and March of 2011. Id. at 292-94. According to plaintiff, these treatment notes "show [plaintiff] often appeared angry, agitated, and upset, and [ ] reported symptoms of irritability, angry outbursts, depression, and mood swings." Pl.'s Mem. at 22-23. Finally, plaintiff points to a consultative examination conducted on May 1, 2012 by psychologist Dennis Noia, Ph.D., in which Dr. Noia indicated that his examination confirmed the existence of plaintiff's then-diagnosed mood disorders. R. at 256-59.

In response, the Commissioner asserts that the ALJ was well within his rights to afford only "limited weight" to Dr. Patil's opinion. According to the Commissioner, Dr. Patil's findings were contradicted by other aspects of the record, such as Dr. Noia's opinion, Dr. Patil's own treatment records, the findings of Dr. Deborah Mangold, and the observations made by Dr. Benedetta Melnick.

For example, the Commissioner points out that the ALJ considered treatment notes from Benedetta Melnick, Ph.D, a nurse practitioner who treated Adams's mood disorders throughout parts of 2011. R. at 19-20 (referring to R. at 298-326). As the ALJ's written decision notes, these treatment notes indicate significant improvements in plaintiff's condition beginning around October 2011 and that plaintiff's self-reports indicated his prescribed

medication regimen had helped to stabilize him.  R. at 20.  The Commissioner also identifies a May 7, 2012 assessment from state agency psychologist Deborah Mangold, who reviewed evidence in plaintiff's file from June 2004 to June 2010 and concluded there was insufficient evidence to establish a psychiatric impairment that would preclude plaintiff from performing "competitive work."  R. at 272.  The ALJ assigned "some weight" to this opinion.  Id. at 20.

More importantly, the Commissioner points out that Dr. Noia's opinion, which was rendered in connection with an in-person consultative psychiatric evaluation, actually undermines Dr. Patil's findings of anything more than "moderate" mental limitations.  Dr. Noia's report indicates Adams is capable of understanding and following simple instructions and directions, capable of performing simple and some complex tasks, capable of maintaining attention and concentration, able to maintain a schedule, learn new tasks, make appropriate decisions, and relate and interact "moderately" well with others.  R. at 259.  The ALJ assigned "great weight" to this opinion.  R. at 20.

The kind of argument pressed by Adams here always presents a difficult question, since a claimant is often able to identify evidence in the record that is favorable to him or that otherwise undermines the conclusions reached by the ALJ.  This case is no exception.  "But whether there is substantial evidence supporting the [claimant's] view is not the question here; rather [a reviewing court] must decide whether substantial evidence supports *the ALJ's decision*."  Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis in original).

On the one hand, Dr. Patil's opinions are memorialized in the form of a checklist and include some fill-in-the-blank statements, making it the sort of report that other courts have assigned only "limited evidentiary value."  Camille v. Colvin, 104 F. Supp. 3d 329, 342

(W.D.N.Y. 2015) (citing cases).  On the other hand, though, reviewing courts have also warned that reports rendered following a single consultative assessment, such as Dr. Noia's, "generally deserve[ only] limited weight."  Sweet v. Astrue, 32 F. Supp. 3d 303, 314-15 (N.D.N.Y. 2012) (Suddaby, J.) (adopting Report & Recommendation of Bianchini, M.J.).

After careful consideration of these principles, the ALJ did not err in weighing the medical opinions in the record.  "It is well-settled that a consulting physicians' opinion can constitute substantial evidence supporting an ALJ's conclusions."  Suarez, 102 F. Supp. 3d at 577 (collecting cases).  "Moreover, an ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence."  Id.  In this case, the ALJ was entitled to conclude, after reviewing the record and the reports from Dr. Melnick and others, that Dr. Noia's opinion was more consistent with the underlying medical evidence than that of Dr. Patil.  Accordingly, plaintiff's argument on this point will be rejected.

### b.  Credibility Determination

Second, Adams argues the ALJ improperly assessed his credibility.  Specifically, plaintiff claims the ALJ improperly determined that plaintiff's testimony regarding the severity and limiting effects of his impairments was "not entirely credible."  R. at 19.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

Where the record evidence does not fully support a claimant's testimony, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. See 20 C.F.R. § 404.1529; SSR 96-7p. First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. See id.

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(I)-(vii); SSR 96-7p.

As before, an ALJ's "[f]ailure to *expressly* consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination." Camille, 104 F. Supp. 3d at 345 (emphasis in original) (citation omitted); see also Sweet, 32 F. Supp. 3d at 318 (noting that where an ALJ finds a claimant's contentions are not credible, he must state his reasoning "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for

the ALJ's disbelief").

In other words, an ALJ "must discuss the relationship between the plaintiff's medically determinable impairment, the plaintiff's reported symptoms, his conclusions regarding the plaintiff's functioning, and why the plaintiff's reported symptoms are or are not consistent with the evidence in the record." Deeley v. Astrue, 2011 WL 454505, at *5 (N.D.N.Y. Feb. 3, 2011) (Scullin, S.J.) (citing SSR 95-5p).

Here, the ALJ briefly summarized the substance of Adams 's relevant testimony: that he had stopped working due to a "significant stress attack," that he "frequently experiences panic attacks with a racing heart, headaches, and difficulty breathing," and that he has "significant problems with concentration." R. at 19.

The ALJ then concluded that Adams's testimony regarding the intensity, persistence, and limiting effects of his symptoms are "not entirely credible." R. at 19. In making this determination, the ALJ determined that plaintiff's "assertions at [the] hearing [were] out of proportion to the type and degree of treatment needed and the findings made on examination." Id. To illustrate the point, the ALJ noted plaintiff's medical records reflected only "mild to moderate" limitations that were in line with plaintiff's self-reports of being able to complete a "modest range of activities," such as living alone and taking care of household chores. Id. With respect to his ability to concentrate, the ALJ noted plaintiff "had no difficulty understanding and responding to questions at the hearing." Id.

The ALJ also considered Adams's medication regimen, noting that plaintiff testified that "his medication does help by leveling out his mood and helping him to remain calm." R. at 19. The ALJ further noted that this testimony fell in line with various mental status examinations in the record. Id. In sum, the ALJ concluded that plaintiff "is not as limited" as

he claimed to be. Id.

Adams seeks to identify various errors in the ALJ's narrative discussion of this evidence, suggesting the ALJ's analysis failed to grapple with the correct issue; that is, his alleged "inability to work outside of the home, for an employer" because it requires plaintiff to bear a greater "level of stress, conforming behavior and sustained concentration" than he is actually capable of handling. Pl.'s Mem. at 24.

But that characterization of the ALJ's determination is not quite fair, since the ALJ actually incorporated this sort of limitation into his ultimate RFC determination. See R. at 18 (concluding claimant "cannot do tasks requiring more than occasional public contact or more than occasional interactions with co-workers").

Further, the Regulations themselves explicitly require an ALJ to consider a claimant's daily activities as part of this credibility assessment. The same is true of Adams's medication regimen and the ALJ's recognition that plaintiff reported relief from his symptoms as a result. In effect, plaintiff seems to be arguing that the ALJ gave insufficient weight to one or more aggravating factors; here, plaintiff is focused on his claim that the presence of any more than a "small handful of people" would worsen his condition despite the apparent success of his medication regimen.

This is essentially a challenge to the weight assigned to the various factors considered by the ALJ as part of his credibility determination. But where, as here, "the ALJ [has] identified specific record-based reasons for his ruling," it is improper for a reviewing court to "second-guess the credibility finding." Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (summary order); see also Kessler v. Colvin, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) (noting that "[a] federal court must afford great deference to the ALJ's credibility

finding").  Accordingly, this argument will also be rejected.

## 2. **Past Relevant Work**

Adams next argues that the ALJ's step four finding—that plaintiff is capable of performing his past relevant work as a meat packager, assembler, kitchen helper, warehouse worker, and janitor—is unsupported by substantial evidence because this past work was never performed at the level of substantial gainful activity.

The Regulations define past relevant work as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 416.960(b)(1).  Substantial gainful activity is further defined as "work activity that is both substantial and gainful." § 416.972.  Work activity is "substantial" if it "involves doing significant physical or mental activities," and it is "gainful" if it is "the kind of work usually done for pay or profit, whether or not a profit is realized."  Id.

In making this determination, "primary consideration" should be afforded to the earnings the claimant derived from the work activity.  See 20 C.F.R. § 416.974(a)(1).  The Regulations provide earnings guidelines that "set a floor for earnings that *presumptively* constitute substantial gainful activity."  Herb v. Colvin, 2015 WL 2194513, at *8 (W.D.N.Y. May 11, 2015) (emphasis added) (citation omitted).  Importantly, "[a]lthough earnings below the guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful activity, earnings below the guidelines will not conclusively show that any employee has not engaged in substantial gainful activity."  Id. (quoting Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993)).

Here, Adams is correct to assert that "there is no indication that the ALJ considered whether Plaintiff performed his past work long enough to learn it, or whether the jobs

constituted substantial gainful activity." Pl.'s Mem. at 14.  However, where, as here, the ALJ

proceeds to step five of the sequential analysis and makes the requisite findings, any error at

this step is harmless.  See R. at 21 ("[E]ven if kitchen helper and janitor were not past

relevant work these jobs exist in significant numbers and . . . a finding of 'not disabled' would

also be reached"); see also Sanchez v. Astrue, 2013 WL 886662, at *6 (W.D.N.Y. Feb. 14,

2013) (Report & Recommendation) (rejecting this claim of error as harmless where ALJ

proceeded to step five of the sequential analysis), adopted by 2013 WL 886320 (W.D.N.Y.

Mar. 8, 2013); Shepard v. Astrue, 2011 WL 5419852, at *8 (D. Vt. Oct. 12, 2011) (declining

to find harmless error because "the ALJ did not proceed to the fifth step of the sequential

evaluation").  Because the ALJ proceeded to step five in this case, this argument will be

rejected.

### 3.  **Step Five Burden**

Finally, Adams argues the ALJ failed to satisfy his burden at step five because he

relied upon Vocational Expert testimony based on an allegedly incomplete hypothetical.

"At step five of the analysis, the burden shifts to the Commissioner to demonstrate

that there are a substantial number of jobs available in the national economy for Plaintiff to

perform."  Scitney v. Colvin, 41 F. Supp. 3d 289, 306 (W.D.N.Y. 2014) (citing Balsamo v.

Chater, 142 F.3d 75, 80 (2d Cir. 1998)).

Ordinarily, the Commissioner satisfies this burden by resorting to the

Medical-Vocational Guidelines, colloquially referred to as the "grids."  Scitney, 41 F. Supp. 3d

at 307.  However, "if a claimant has nonexertional impairments which significantly limit the

range of work permitted by his exertional limitations, then the Commissioner cannot rely upon

the grids, and instead must introduce the testimony of a vocational expert (or other similar

evidence) that jobs exist in the economy which claimant can obtain or perform." Id. (citation and internal quotation marks omitted).  Importantly, though, "[a] valid hypothetical question need only incorporate limitations that an [ALJ] finds credible and which are supported by substantial evidence." Walker v. Colvin, 2013 WL 5434065, at *12 (N.D.N.Y. Sept. 27, 2013) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.).

In this case, the ALJ's hypothetical matched the RFC determination set forth above.  R. at 53 (directing VE to consider hypothetical claimant without "any specific exertional or environmental restrictions" but "who cannot perform tasks that require more than occasional public contact or . . . more than occasional interactions with coworkers").  Adams's argument at this step relies on the systemic effects of alleged errors made by the ALJ at earlier points in the sequential evaluation.  Because the preceding discussion rejects those claims of error, plaintiff's step five claim must also be rejected.

## IV.  CONCLUSION

The ALJ applied the appropriate legal standards and supported his decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  Adams's motion for judgment on the pleadings is DENIED;

2.  The Commissioner's motion for judgment on the pleadings is GRANTED;

3.  The Commissioner's decision is AFFIRMED; and

4.  Adams's complaint is DISMISSED.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated:  June 23, 2016
        Utica, New York.

_____
United States District Judge